# CIRCUIT COURT OF THE CITY OF RICHMOND

Jenny Floyd (Greene)

v.

Leonard Franklin Floyd, Jr.

October 2, 1997

Case No. N-2681-2

BY JUDGE RANDALL G. JOHNSON

This is an appeal from the Juvenile and Domestic Relations District Court of the City of Richmond. At issue is the amount of child support arrears owed by Leonard Floyd to his former wife, Jenny Greene.

The final decree ordering support was entered on March 3, 1987, and required Floyd to pay $300 per month for the parties' son, who was then two years old. The decree directed Floyd to make his payments directly to Greene "until further notice." On February 10, 1993, and pursuant to Va. Code § 20-60.5, the Division of Child Support Enforcement (DCSE) executed a "Change in Payee Notice" directing Floyd to make all future support payments to DCSE instead of to Greene. The notice was served on Floyd by a City of Richmond deputy sheriff by posted service. DCSE never sent Floyd any other notice of the change of payee. Until February of this year, after a show cause order was served on Floyd by this court on the petition of DCSE, Floyd made no payments to DCSE. DCSE now claims that Floyd owes it $26,400 plus interest, and that he owes Greene $900 plus interest for payments he was supposed to make directly to her. While Floyd concedes that some arrears are owed, he claims that the amount is much less. The fact that the amount claimed by DCSE is more than $300 a month times the almost fifty-six months since the February 1993 notice is due to Greene's having received public assistance payments even while Floyd was supposed to make payments directly to her. By statute, DCSE is entitled to receive those amounts from Floyd to the extent he failed to make payments to Greene.

At a hearing on September 26, Floyd produced a five-page handwritten document purporting to show payments he made directly to Greene between February 1993 and January 1997. The document contains the date of each alleged payment, the amount of each payment, and what appears to be Greene's signature beside each payment. The total amount of payments shown on the document is $11,260. It was Floyd's testimony that all of the payments shown on the document were made to Greene, that Greene signed for each payment, and that he, Floyd, never received notice that he was supposed to make payments to DCSE instead of to Greene. He also testified that when he received a collection letter in September 1995 from a collection agency employed by DCSE to collect child support arrears, he sent the agency a copy of the subject document and heard nothing else from the agency until March of this year, after he had been in this court on the present show cause. Again, Floyd testified that he never heard anything from DCSE.

For her part, Greene testified that of the fifty-seven separate payments purportedly shown on Floyd's document, she only received three. She also testified that she did sign for the three payments she did receive and that when she did, she saw her "signatures" beside all of the "payments" before the ones she admits she then signed for. Specifically, she admits she signed for a $70 payment in February 1994. Above that payment on the document are sixteen other "payments" totaling $1,750 with her "signature" beside each one. By the time she received a $300 payment in October 1995, which she admits she received and signed for, there were thirty-nine prior "payments" totaling $7,110, each with her "signature" beside it, which she says she never received or signed for. When she received and signed for a $100 payment in January 1997, just before the first hearing in the present proceeding, there were fifty-one prior "payments" totaling $10,160 which she now says she never received, and fifty-one "signatures" which she now says are not hers.

DCSE argues that the amount of arrears should not be reduced by the payments claimed to have been made by Floyd directly to Greene. This is so, says DCSE, because Floyd had statutory notice since February 1993 that his payments were to be made to DCSE and not to Greene. Thus, according to DCSE, even if he did make the payments to Greene shown on the questioned document, something DCSE does not concede, he did so at his risk and should not be given credit for them. Floyd, of course, claims that he should not be penalized for not complying with a notice he never received and that the payments shown on the document should be subtracted from the amount claimed by DCSE. The court agrees with Floyd.

Va. Code § 20-60.5 deals with change of payee notices. That section requires that such notices be "served or sent by certified mail, return receipt

requested." Va. Code § 8.01-296(2)(b) allows service by posting. That same section, however, provides that before default judgment can be obtained against a defendant served by posting, a copy of the paper served must be mailed to the defendant. While the present proceeding is not technically one for a default judgment, the requirement of mailing the paper to a defendant served by posting clearly shows the legislature's appreciation of the problems inherent in posted service.

Floyd testified that in 1993 he lived on the first floor of a duplex apartment house in the Oregon Hill section of Richmond. His upstairs neighbors had children. Many other houses and apartments were on his street, many of those with children. It does not require much imagination to believe that a posted notice in such a neighborhood, or in any neighborhood, might be deliberately taken down by someone other than defendant or simply destroyed or removed by accident. In fact, the court finds from the evidence that Floyd did not receive the posted change of payee notice in February 1993, and that he did not know until after the present show cause proceeding was begun that his payments were supposed to go to DCSE instead of to Greene. The court further finds that it is precisely because the legislature also knows that papers served by posting do not always reach the persons for whom they are intended that an additional notice is required before default judgment can be taken against a person served by posting. And the court finds that even though this case does not technically involve a request for default judgment, the same principle applies. In fact, it applies even more.

This is not an action at law in which one party is seeking a money judgment against another party for some tort or breach of contract or other civil wrong. This is an action to ensure that a child is properly supported by his parents. It involves an ongoing obligation that does not end by entry and payment of a "final judgment." While it is not the function of this court to tell a state agency how to conduct its affairs, it is almost unconscionable that a notice telling a payor to change his method of payment would be posted on the payor's front door with absolutely no follow-up until almost four years and over $10,000 in arrears later. Surely, there is a better way. And the better way is simply to use the other method of giving notice provided for in § 20-60.5, which is certified mail, return receipt requested, or by posted service *and* notice by regular mail in accordance with § 8.01-296(2)(a). Of course, if regular mail is used, it must be done early enough in the process to make a difference. Four years after posting is not early enough.

The court also is not impressed with DCSE's argument that because the statute allows posted service, the certificate of the deputy sheriff that service was posted in accordance with the statute conclusively shows that service was

made and that defendant had all the notice of a change in payee that he was entitled to have. If that argument is correct, defendants served with posted service in actions at law also have all the notice they are entitled to have. If that is true, though, then why the requirement of mailing? Obviously, it is a recognition of the court's power to exercise some discretion in entering or not entering a default judgment after hearing a defendant's reason for not responding to the motion for judgment. And just as obviously, that reason might be that the defendant never received notice of suit in spite of the fact that it was posted in perfect compliance with the statute. The court believes that the same is true for payors of child support. Accordingly, because the court finds as a matter of fact that Floyd did not receive the notice of change of payee that was posted to his door in 1993, and because the court also finds as a matter of fact that Floyd did not know until after the present show cause was issued that he was supposed to make his payments to DCSE, the court will not penalize Floyd for not responding to the notice served by posting in February 1993.

Turning now to the substantive issue in the case, the court must determine whether Floyd or Greene is lying. They cannot both be telling the truth. Nor are the facts such that one of them simply has a bad memory. Either Floyd did not make the payments he claims to have made and forged Greene's signatures or Greene received the contested payments, signed for them, and committed perjury by testifying otherwise. The court believes that Floyd made the payments.

As already discussed, Greene testified that she only received three of the fifty-seven payments shown on the written document. She also testified that when she signed for those three payments, she saw that other payments were listed as having been received by her with her "signature" beside each payment. Still, she signed for the three payments without ever complaining to DCSE, this court, or anyone else, at least until now, that Floyd was engaging in such blatant misconduct. Her explanation for this is that she was afraid that if she complained she would not get *any* money from Floyd; that is, that it was better to get the payments she admits getting and allow Floyd to continue to defraud her, her child, the Commonwealth, and this court, than to simply tell someone that Floyd was not obeying a court order for support. The court does not believe her.

Ms. Greene is not some naïve little girl who does not understand her rights. Indeed, the divorce proceeding filed in 1985 out of which the present show cause arises was filed by her, and she had competent counsel representing her. In fact, as early as 1986 she and her counsel were successful in having the court award attorney's fees for Floyd's failure to appear at a hearing. Even

after the divorce was entered and her counsel no longer represented her, her interests have always been represented by competent counsel from DCSE who, the court assumes, would have immediately brought to the court's attention both Floyd's failure to comply with his support obligation and his brazen fraud and forgery. Moreover, the court finds it incredible that Greene would be so anxious to receive $470, which is the total of the three payments she admits receiving, that she would allow Floyd's fraud and forgery and give up receiving the more than $27,000 now claimed to be in arrears. Her story simply makes no sense and is rejected in its entirety. Accordingly, Floyd will be given credit for all of the payments shown on the document and that the court now finds Greene signed for. That amount, as noted earlier, is $11,260.

With regard to the other arrears claimed by DCSE, those amounts were not seriously challenged by Floyd. While Floyd did claim to have made other payments directly to Greene for which no receipts or other evidence of payment were made, he was unable to state the amounts or dates of such payments. The court cannot give him credit for them. Consequently, the court finds that of the $26,400 claimed to be owed to DCSE, $11,260 must be subtracted, leaving a balance of $15,140. No subtraction need be made from the $900 claimed to be owed directly to Greene, which the court finds is owed. The court will also order that interest at the legal rate of 9% per year be paid on all of the arrears from December 10, 1996, the date of DCSE's motion for the present show cause order, until paid. Interest is not awarded for periods before that date because the court is not satisfied that DCSE or Greene took sufficient steps to adequately protect their interests until then.

Mr. Fitzgerald is requested to prepare a sketch of an order consistent with the above opinion. The order may, if the parties agree, provide for a payment schedule by which Floyd will pay off the arrears; otherwise, the order should be in the form of a judgment order which simply states the amount of judgment against Floyd.